**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-04413-JLK

CARLOS EDUARDO GUZMAN OSORIO,

Petitioner,

v.

JUAN BALTAZAR, Warden of the Aurora Detention Facility;
GEORGE VALDEZ, Acting Field Office Director, Denver Field Office,
Immigration and Customs Enforcement;
MARKWAYNE MULLEN, Secretary, U.S. Department of
Homeland Security; and
TODD BLANCHE, United States Attorney General

Respondents.

---

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (ECF NO. 1)**

---

Kane, J.

This matter comes before me on Petitioner Carlos Eduardo Guzman Osorio's Petition for Writ of Habeas Corpus (ECF No. 1) challenging his unlawful detention at the U.S. Immigration and Customs Enforcement ("ICE") Detention Facility in Aurora, Colorado. Respondents, the warden of the Aurora Detention Facility, the Acting Field Office Director of the Denver ICE Field Office, the Secretary of the U.S. Department of Homeland Security ("DHS"), and the U.S. Attorney General, were ordered to show cause why the Petition should not be granted. Respondents nominally filed a Response to Petition for Writ of Habeas Corpus and Order to Show Cause (ECF No. 5). However, the Response indicates that Respondents will not file a brief in opposition to the Petition. Resp. to Pet. at 1, ECF No. 5.

## I. Background

The limited facts I have before me are from Mr. Guzman Osorio's Petition and, as Respondents chose not to "submit[] a brief in opposition to the Petition detailing the facts and circumstances of this case," Resp. to Pet. at 1, I treat Mr. Guzman Osorio's assertions as true, *see Burlington N. R. Co. v. Huddleston,* 94 F.3d 1413, 1415 (10th Cir. 1996) ("By failing to submit an answer or other pleading denying the factual allegations of Plaintiff's complaint, Defendant admitted those allegations, thus placing no further burden upon Plaintiff to prove his case factually.").

Mr. Guzman Osorio is a citizen of El Salvador who entered the United States on a B1/B2 visa on November 14, 2000. Pet. for Habeas Corpus at 6, ECF No. 1. Mr. Guzman Osorio resided in the United States for twenty-six years until he was arrested by ICE on August 4, 2026. *Id.* at 6. He is currently being detained at the ICE Detention Facility in Aurora, Colorado. *Id.* at 6. Mr. Guzman Osorio was issued a Notice to Appear and, after a bond hearing, was denied bond on the basis that he was a flight risk and a danger to the community. *Id.* at 6-7. Yet, respondents did not conduct an individualized determination that he would be likely to escape or that he presents a danger. *Id.*at 7. Instead, the Immigration Judge ("IJ") listed dismissed charges, a restitution amount, Mr. Guzman Osorio's guilty plea to criminal mischief and misdemeanor possession of an identification document, and a failure to appear in 2024. Immigration Judge Order, ECF No. 1-1 at 9. On September 14, 2026, Mr. Guzman Osorio filed the Petition for Writ of Habeas Corpus in this case, requesting that the Court assume jurisdiction over the matter, prohibit Respondents from removing him from the State, declare that Respondents' actions violate the Fifth Amendment to the U.S. Constitution, and issue a writ of habeas corpus requiring

Respondents to release him immediately or to conduct a prompt, individualized, and reasoned custody determination at which DHS bears the burden of proof.

## II. Legal Standard

I begin with the statutory authority that empowers federal courts to issue writs of habeas corpus. Section 2241 of Title 28 of the U.S. Code provides that "[w]rits of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions" when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a) & (c). Specifically, "[c]hallenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004)). The general rule for habeas petitions challenging present physical confinement is that jurisdiction lies in the district of confinement. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004). Here, Mr. Guzman Osorio is confined in Aurora, Colorado, which falls within this District. Pet. for Habeas Corpus at 3.

Mr. Guzman Osorio challenges his bond proceeding as constitutionally deficient, alleging it violated his Fifth Amendment procedural due process rights. Pet. for Habeas Corpus at 11. The Tenth Circuit recently explained: "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1250 (10th Cir. 2026) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Due process requires the Government to have a good reason for detaining somebody, and that reason must "rise to the level of a 'strong special justification'" for immigration detention. *Id.* at 1249 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).

Section 1226 of Title 8 of the U.S. Code addresses the apprehension and detention of noncitizens.[1] 8 U.S.C. § 1226(a). The Tenth Circuit has recently confirmed that § 1226(a) governs arrests in the interior of the United States of noncitizens who have removal proceedings pending against them. *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1237 (10th Cir. 2026). Thus, because Mr. Guzman Osorio was arrested by ICE in the interior of the United States while removal proceedings are pending against him, § 1226(a) applies to his arrest. Section 1226(a) authorizes the Attorney General to release noncitizens on bond, and the Tenth Circuit has held that noncitizens arrested under that provision are, therefore, entitled to a bond hearing, *see Santillan Quiroz*, 180 F.4th at 1251. Immigration Judges, while acting as the Attorney General's delegates,[2] are charged with conducting bond hearings. Exec. Office for Immigr. Rev., U.S. Dep't of Justice, Immigration Court Practice Manual pt. II, ch. 8.3 (2026).

The Immigration and Nationality Act provides that "[t]he Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review" and specifically that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien." 8 U.S.C. § 1226(e). Nevertheless, this provision "only bars review of the Attorney General's discretionary judgment." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)). And "[w]hether [a petitioner] received the due process to which he was entitled 'is

---

[1] I use the term "noncitizen" as an equivalent to the word "alien" in the relevant statutes. I do so because "noncitizen" is not only more appropriately descriptive but also because it is less likely to carry the same biases. *See* Keith Cunningham-Parmeter, *Alien Language: Immigration Metaphors and the Jurisprudence of Otherness*, 79 FORDHAM L. REV. 1545, 1585 (2011) ("By appropriating, repackaging, and circulating certain immigration metaphors, [] [c]ourt[s] join[] other cultural institutions in creating a dominant account of who immigrants are and how they should be treated.").

[2] 8 CFR § 1003.10.

not a matter of discretion' and is subject to judicial review." *Id.*; *see also Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (finding § 1226(e) did not preclude detainees claims where they challenged "the constitutionality of the entire statutory scheme under the Fifth Amendment"). Thus, I emphasize that, in this Order, I do not weigh the evidence before the Immigration Judge or act as an appellate court reviewing the Immigration Judge's determination. Rather, I "review the nature and structure of the Immigration Judge's decision for the minimal indicia of due process." *Mejia v. Baltazar*, No. 26-cv-00385, 2026 WL 1361514, at *1 (D. Colo. 2026) (quotation omitted); accord *Lopez v. Paulk*, 830 F. Supp. 3d 1356, 1364 (M.D. Ga. 2026) (collecting cases).

The "type of process required in a given case" is determined using the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Marin v. King*, 720 F. App'x 923, 940–41 (10th Cir. 2018) (unpublished). Under *Mathews*, courts consider three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

## III. Analysis

Respondents have not provided any argument or set forth any evidence indicating that Mr. Guzman Osorio's bond hearing afforded him proper due process. Instead, Respondents chose not to "submit[] a brief in opposition to the Petition detailing the facts and circumstances of this case." Resp. to Pet. at 1; *see McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010)

(explaining that plaintiff's "failure to develop her arguments adequately in the district court" resulted in her claim either being waived or forfeited). Despite not submitting a brief in opposition, or any filing detailing the appropriateness of Mr. Guzman Osorio's bond proceeding, Respondents still ask that I issue an Order "directing that Respondents, within seven days . . . provide Petitioner with a bond hearing . . . or else release Petitioner." *Id.* at 2. I find that Mr. Guzman Osorio's bond hearing, such as it was, violated his procedural due process rights and that the proper remedy is his immediate release, not the suggested do-over bond hearing. *See L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024) (noting respondents "bear the burden to justify Petitioner's detention").

Turning to the *Mathews* factors, I find the first factor supports Mr. Guzman Osorio's claim. Mr. Guzman Osorio's private interest in his physical freedom is undermined by his continued detention. A person's physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (describing "the interest in being free from imprisonment" as "the most significant liberty interest there is"). The weight of this interest must be balanced by extensive procedural protections.

And the second *Mathews* factor also tilts the scale in support of Mr. Guzman Osorio's claim because the Immigration Judge did not provide Mr. Guzman Osorio even basic procedural protections. The Immigration Judge's bond order is deficient on its face. It offers no analysis as to what specific evidence the Immigration Judge relied on in issuing her ruling. Instead, the Immigration Judge summarily and incoherently listed the following reasons for denying Mr. Guzman Osorio bond:

> Respondent was charged theft $100k to $1M, dismissed for plea. ID theft, possession with intent to use dismissed by DA. Commercial instrument fraud was

> dismissed by DA. Respondent pled to criminal misch[sic] felony and an ID misdemeanor with a $200,000 restitution. 2024 Failure to Appear in Boulder county.

Immigration Judge Order, ECF No. 1-1 at 9. Most of this reasoning relates to dismissed charges, and the Order fails to explain how these facts might make Mr. Guzman Osorio a flight risk or a danger to the community. Additionally, there is no indication that the Immigration Judge's considered evidence refuting Mr. Guzman Osorio's dangerousness and flight risk—his family ties, caregiving responsibilities, long residence, rehabilitation, and potential eligibility for immigration relief.

At the bond hearing, the Immigration Judge commented that she did not think Mr. Guzman-Osorio qualified for bond because she considered his conviction for criminal mischief to be an aggravated felony. Pet. for Habeas Corpus at 2, 7, 12. Ultimately, however, the Immigration Judge's Order did not give conviction of an aggravated felony as a basis for denying bond. *Id.* The Order simply references the criminal mischief conviction without connecting it to any statutory basis for mandatory detention. *Id.*

When an Immigration Judge makes such determinations without providing reasoning or analysis as to why certain facts are weighed heavier than others, "the risk of an erroneous deprivation" of Mr. Guzman Osorio's most significant liberty interest is substantial. *Mathews*, 424 U.S. at 335. If the proper burden were applied, the full evidence were considered, and a reasoned explanation were given, the risk of a wrongful deprivation would decrease, and the likelihood of a more accurate and fair determination would increase. This is the basic purpose of due process and a primary requirement of the judicial function.

The elemental nature of the liberty interest at stake here weighs in favor of placing the burden on Respondents to justify a noncitizen's continued detention. Because immigration

detention is civil, and immigration detainees have not been charged with any crime, Respondents must have a "sufficiently strong special justification." *Zadvydas*, 533 U.S. at 690. Respondents are also better situated to have "through its own records and investigative tools regarding Petitioner and his alleged danger to the community," that can be used to prove Petitioner's danger should it exist. *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1184 (D. Colo. 2024). Courts in this District have repeatedly stated the burden is on the Government to justify a noncitizens' continued detention at a bond hearing by clear and convincing evidence. *Isaac Mendoza Hernandez v. Baltazar*, No. 26-cv-3652, 2026 WL 2453685, at *5 (D. Colo. Aug. 21, 2026) (collecting cases). This is fair, as requiring the alternative would consist of "requiring a noncitizen to prove that [he or she is] not a flight risk and not a danger to the community [which] is an inherently more difficult burden to meet than proving the affirmative," since "'it is never easy to prove a negative.'" *Alfaro Herrera v. Baltazar*, No. 25-cv-04014, 2026 WL 91470, at *10 (D. Colo. Jan. 13, 2026) (quoting *Elkins v. United States*, 364 U.S. 206, 218 (1960)).

Moreover, a clear and convincing standard is the most appropriate in this situation. Not only has the Supreme Court generally held that pretrial civil confinement is permitted "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identifiable and articulable threat to an individual or the community," but I see no reason why more lenient standard should be employed. *United States v. Salerno*, 481 U.S. 739, 751 (1987). Whether an individual is a danger to the community does not change based on citizen-status, therefore it would defy logic to impose a different standard due to that difference. In this case, there is no indication from the Immigration Judge's Order or the record in front of me that the Immigration Judge placed the burden on the Government or required a showing of a clear and convincing standard.

Finally, as for the third *Mathews* factor, the Government's interest here does not outweigh the value of basic due process protections. There may be "fiscal and administrative burdens" that result from requiring a reasoned determination that identifies the Government's evidence and discusses the nexus between that evidence and current danger or flight risk. *Mathews*, 424 U.S. at 335.[3] However, the administrative burden is borne within the system regardless.[4] Moreover, a proper, reasoned, decision would aid Respondents as such rulings would reduce the risk that a civil confinement rests on unsubstantiated findings, and result in overall cost savings and protect the legitimacy of government institutions. *L.G.*, 744 F. Supp. 3d at 1185 ("[T]he government, and therefore the public, may save fiscal resources if detention is only used for noncitizens who are proven to be a flight risk or dangerous.").

I have reviewed the record for indicia that the Immigration Judge afforded Mr. Guzman Osorio even minimal of due process protections and have found none. Consequently, I find that all three *Mathews* factors tilt the scale such that Mr. Guzman Osorio's bond hearing violated his due process rights.

The only contested question in this case is whether Mr. Guzman Osorio's release or a new bond hearing is the appropriate remedy. Respondents provide no argument to justify their request that I order a new bond hearing. Instead, they cite a single case—*Santillan Quiroz*, noting that the Tenth Circuit remanded that case and directed the district court to "order the

---

[3] I note that the administrative burden Respondents might incur is not analogous to courts' concerns about congested dockets, as courts generally do not initiate the proceedings in front of them and rarely set policies that increase or decrease their workload.

[4] Chief Judge John J. McConnell Jr. has observed that "[Immigration Judge's] have faced enormous pressure from the Executive Branch to dismiss cases quickly and rule in certain ways." *Garcia v. Hyde*, 817 F. Supp. 3d 112, 131 (D.R.I. 2025). I enthusiastically reiterate his response that "due process is not satisfied by rubberstamp denials of bond[s], and [Immigration Judges] are not absolved of their duty to ensure that noncitizens receive constitutionally adequate bond hearings." *Id.* (alteration in original) (citation omitted).

Government to, within seven days of such order, either provide [the petitioner] with a bond hearing or else release him." Resp. to Pet. at 2 (quoting *Santillan Quiroz*, 180 F.4th at 1251 n.13). At issue in that case was whether the petitioner was entitled to a bond hearing; the respondents had not already conducted a constitutionally inadequate bond hearing.

Federal courts have wide discretion and flexibility in granting specific habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). In its Response, the Government could have presented evidence to this Court that Mr. Guzman Osorio is a flight risk or danger to the community, and it did not. Without any evidence before the court that Mr. Guzman Osorio should not be released, his immediate release is warranted.

I concur with my colleague Judge William J. Martínez and share in his "concern that immigration courts are not affording immigrants fair bond hearings as the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore." *Hernandez*, 2026 WL 2453685, at *6. In fact, many courts have ceased ordering bond hearings, "because Respondents' conduct can no longer be attributed to mere negligence or ineptitude." *Id.*; *accord Garcia v. Hyde*, 817 F. Supp. 3d 112, 131 (D.R.I. 2025) (ordering petitioner's release, "[g]iven the due process violations that pervaded his bond hearing"); *Miti v. Moniz*, 827 F. Supp. 3d 206, 219 (D. Mass. 2026) (ordering petitioners immediate release after finding that respondents failed to carry their burden); *Miri v. Bondi*, No. 26-cv-00698, 2026 WL 622302 (C.D. Cal. Mar. 5, 2026) (granting petitioner's temporary restraining order and requiring respondents to release petitioner within forty-eight hours); *Reyes Vargas v. Warden, Plymouth Cnty. Correctional Facility*, No. 26-cv-11740, 2026 WL 1453510, at *8 (D. Mass. May 22, 2026) (ordering petitioner's release and noting that when "a petitioner does not pose a danger to the community or is unlawfully determined to be a flight

risk, courts have regularly ordered immediate release”). I join these courts in condemning the disregard of petitioners’ rights during these immigration proceedings.

## IV. Conclusion

Therefore, it is ORDERED:

1. Petitioner Guzman Osorio’s Petition for Habeas Corpus [ECF No. 1] is GRANTED;
2. Respondents shall release Petitioner Guzman Osorio from custody within 24 hours of this order, along with his passport, identification documents, or other personal property of Petitioner Guzman Osorio that Respondents may have in their possession;
3. Respondents are ENJOINED from re-arresting or re-detaining Petitioner Guzman Osorio unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or danger to the community such that his physical custody is legally justified. At any such bond hearing, Respondents shall bear the burden of proof, and Petitioner Guzman Osorio shall be allowed to have counsel present. This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;
4. Should Petitioner Guzman Osorio believe he has a good faith basis to seek attorney fees pursuant to the Equal Access to Justice Act, he may file a motion, along with all supporting documentation, by no later than October 13, 2026. Respondents shall file a response by no later than October 27, 2026, and Petitioner Guzman Osorio shall file a reply by no later than November 10, 2026; and
5. The parties shall file a status report confirming that Petitioner Guzman Osorio has been released from custody on or before October 5, 2026.

DATED this 30th day of September, 2026.

John L. Kane

JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE